Filed 12/9/25  In re E.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Plumas)

----

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | |
| PLUMAS COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>K.D.,<br><br>Defendant and Appellant. | C102521<br><br>(Super. Ct. No. JV24-00026) |

Appellant K.D. (mother), mother of the minor E.M., appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 395.)[1] Mother contends the juvenile court erred in overruling her objections to hearsay

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

1

statements in the jurisdiction and addendum reports, failing to support its jurisdictional findings with substantial evidence, and denying her request to continue the jurisdiction hearing. Mother also contends the juvenile court and the Plumas County Department of Social Services (Department) failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) because the Department failed to make proper inquiry of known relatives regarding the minor's possible Indian ancestry, and the juvenile court abused its discretion when it found the ICWA did not apply. Finding any error in admitting the hearsay evidence forfeited but, in any event, harmless, we will vacate the juvenile court's ICWA finding and remand for further ICWA compliance but otherwise affirm.

## BACKGROUND

In June 2024, the 16-year-old minor was detained from mother's custody after the minor admitted being under the influence of methamphetamine and ecstasy. At that time, the minor also reported that mother knowingly allowed her roommate M.C. to provide the minor with those illegal substances, mother used methamphetamine with M.C. and mother's partner, S.S., while the minor was in her care, M.C. persuaded the minor to have sexual intercourse with her on more than one occasion while both she and the minor were living with mother, and mother was aware the minor was having sexual intercourse with M.C. but did not contact the authorities. In addition to being mother's roommate, M.C. was also the mother of the minor's 16-year-old girlfriend, D., with whom the minor shares one child and is expecting another, and who also lived in the home.

On June 27, 2024, the Department filed a dependency petition alleging failure to supervise and protect the minor (§ 300, subd. (b)) and sexual abuse of the minor (§ 300, subd. (d)) due to mother's substance abuse, provision of illegal drugs to the minor, and

2

failure to protect the minor from sexual abuse by M.C.[2]  Thereafter, the juvenile court ordered the minor detained and placed out of the home.

The Department's jurisdiction report, filed on July 8, 2024, provided supporting evidence for the allegations in the petition.  The report stated, among other things, that a witness, L.C. (M.C.'s mother) contacted law enforcement regarding drug use at mother's home.  The responding sheriff's deputy interviewed the minor and his girlfriend, D., both of whom admitted using illegal substances provided to them by M.C.  The minor also stated he had been persuaded to engage in a sexual relationship with M.C., and that mother was aware of both the sexual relationship and the substance abuse.  The deputy then spoke with the social worker about his observations regarding the minor and D. and their admissions regarding use of illegal substances while in mother's care.

Mother spoke with the social worker several days later and admitted she knew about the sexual relationship between the minor and M.C. and, although she made M.C. leave the home, she did not file a police report or contact law enforcement.  Mother also stated any substance abuse by the minor "would have been initiated and supplied by [M.C.]"  M.C., however, told the social worker that it was mother who provided the illegal drugs and who kicked her out of the house when she confronted mother about providing drugs to D.  Details of the witnesses' statements were contained in sheriff's reports attached to the jurisdiction report.

On August 20, 2024, mother filed a section 355 objection, arguing specific hearsay evidence contained in the Department's jurisdiction report—specifically, "[a]ll statements attributed to the [minor] to the law enforcement officer as well as the social worker" as contained on page No. 10 of the report and "all statements attributed to [M.C.] to the

---

[2]      Minor amendments were made to the petition on July 8, 2024.

3

social worker regarding the mother in regard to providing illegal substances to [D.] and [the minor]" as contained on page No. 11 of the report—was insufficient, by itself, to support a jurisdictional finding.

On September 3, 2024, the Department filed an addendum report providing additional supporting evidence for the allegations in the amended petition.  The report stated, among other things, that M.C.'s daughter, D., told social worker Sara Bishop and program manager Debbie Wingate that she had gone to Reno, Nevada with M.C., the minor, mother, and mother's partner, S.S., to purchase illegal drugs.  The report also stated the minor provided the social worker with screenshots of text messages between himself and M.C. and told the social worker the conversations concerned his sexual relationship with M.C. in mother's home.

Mother filed a second section 355 objection on September 13, 2024, arguing specific hearsay evidence contained in the Department's addendum report—"all statements attributed to [D.] to social worker Sara Bishop and Program Manager Wingate" as contained on page No. 5 of the report, and the statement, "[w]hen questioned by Social Worker Bishop, [the minor] stated the conversation was between himself and [M.C.], and concerned this sexual relationship in [mother's] home" as contained on page No. 6 of the report—was insufficient, by itself, to support a jurisdictional finding.

### Contested Jurisdiction Hearing

After several continuances, the contested jurisdiction hearing commenced on October 16, 2024.  Mother was not present but was represented by counsel, who requested another continuance based on mother's claim "several weeks ago" that she was involved in a car accident and was hospitalized.  Mother's counsel noted that, while apparently no longer in the hospital, mother was "not going to make it to the hearing." The Department opposed the request, arguing mother had been deceptive to the court since the inception of the case and had not produced any documentation to support her claim, the motion was not timely, the court had already made a finding of exceptional

4

circumstances in order to continue the hearing to the present date, and there was no good cause or exceptional circumstances for the requested continuance. The court denied mother's request for continuance and proceeded with the hearing on the amended petition filed July 8, 2024, as further modified on the record. The Department submitted on its jurisdiction and addendum reports. Mother's counsel presented no evidence and submitted.

Mother's counsel reiterated her objections to hearsay contained in the Department's reports, as previously set forth in mother's section 355 objections, arguing it was the Department's responsibility to make witnesses available for cross-examination and the court could not rely on hearsay. The Department argued that, as to mother's August 20, 2024, objection to statements the minor made to the law enforcement officer and the social worker, there were two applicable exceptions to hearsay—statements made by law enforcement officers and statements made by a party (here, the minor). In addition, the Department noted the officer independently "observed [the minor] exhibiting objective symptoms of being under the influence." Based thereon, the Department argued, the court could consider the challenged statements as the basis for finding jurisdiction. The court overruled mother's first objection.

As to mother's August 20, 2024, objection to statements made by the minor to the social worker regarding mother providing illegal substances to D. and the minor, mother's counsel again argued the declarant needed to be made available for cross-examination. The court noted that mother submitted the matter to the court thus there was no requirement that the Department produce parties to testify. The Department again argued the challenged statements fell within exceptions to the hearsay rule. The Department further noted that there was otherwise significant corroborating evidence in the police reports that mother provided illegal substances to the minor and D., thus rendering the evidence admissible for the court's consideration. The court overruled

mother's second objection, finding there was sufficient evidence in the police reports, the minor's statements, and mother's own statements to corroborate the hearsay.

With respect to mother's September 13, 2024, objection to statements made by D. to social worker Bishop and program manager Wingate, mother's counsel once again argued the Department needed to make the declarants available for cross-examination. The Department argued that, because the challenged statements by D. related to abuse and neglect by mother, those statements were admissible pursuant to section 355.1, subdivision (b), which renders admissible proof that a parent who is the subject of the petition (here, mother) has "physically abused, neglected, or cruelly treated another minor [here, D.]." The court overruled mother's objection.

As for mother's September 13, 2024, objection to the statement by the minor to social worker Bishop that the text conversations between himself and M.C. concerned their sexual relationship in mother's home, mother's counsel simply stated, "[s]ame argument." The Department argued the statement was admissible as a party admission under Evidence Code section 1220, and that the statement was supported by mother's statement to the social worker that she was aware of the sexual relationship between the minor and M.C. The Department argued further that the sheriff's report authored by Deputy Tom Klundby contained additional support in the form of mother's admission to another deputy that she knew the minor was having sexual intercourse with M.C. but chose not to report it to law enforcement. Finally, the Department noted that while there was the additional quantum of evidence necessary for the court to find jurisdiction based on the challenged statement alone, the Department was not asking the court to make its jurisdictional findings on a single or unsupported statement. The court overruled mother's objection, finding it was a party admission and that there was no requirement for the statement to be corroborated by a social worker.

The parties submitted without further evidence or argument. The juvenile court sustained the allegations in the amended petition, exercised dependency jurisdiction over

6

the minor (who had absconded from his placement and was still at large), and set the matter for a disposition hearing.

### Disposition Hearing

At the November 18, 2024, disposition hearing, the juvenile court ordered the minor removed from the parents and continued in out-of-home placement, with reunification services and supervised visitation to the parents. Mother appealed.

## DISCUSSION

## I

### Hearsay Objections and Jurisdictional Findings

Mother contends the juvenile court abused its discretion when it overruled her evidentiary objections to hearsay statements in the jurisdiction and addendum reports. Specifically, she claims the Department's support for the allegations in the petition—the "uncorroborated hearsay" of the minor, D., and M.C.—was insufficient to support the court's jurisdictional findings.

### Denial of Hearsay Objections

The Department argues the court ruled within its discretion and, in any event, the court's jurisdictional findings were supported by substantial evidence.

Section 355, subdivision (a) provides that for purposes of a jurisdictional hearing, "[a]ny legally admissible evidence that is relevant to the circumstances or acts that are alleged to bring the minor within the jurisdiction of the juvenile court is admissible and may be received in evidence." A social study and the hearsay evidence contained in it are admissible and constitute competent evidence on which a finding of jurisdiction pursuant to section 300 may be based, to the extent allowed by section 355, subdivisions (c) and (d). (§ 355, subd. (b).)

"If a party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact

7

upon which a jurisdictional finding is based" (§ 355, subd. (c)(1)), unless, as relevant here, the petitioner establishes there is a statutory or decisional exception to the hearsay, the hearsay declarant is a peace officer, or the hearsay declarant is available for cross-examination. (§ 355, subd. (c)(1)(A), (C) & (D); *In re Lucero L.* (2000) 22 Cal.4th 1227, 1245.)

Hearsay evidence must be corroborated to constitute substantial evidence upon which to base a jurisdictional finding. (*In re B.D.* (2007) 156 Cal.App.4th 975, 983-984.) "Corroborating evidence is '[e]vidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point.' [Citation.] In this context, corroborating evidence is that which supports a logical and reasonable inference that the act described in the hearsay statement occurred." (*Id.* at p. 984.)

Here, it is undisputed that mother's written objections were timely and specific. She objected on the singular ground that, pursuant to section 355, subdivision (c)(1), the hearsay statements could not be relied upon as the sole basis to find jurisdiction without the declarant being made available for cross-examination. As a preliminary matter, a " 'trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal.' " (*People v. Guenther* (2024) 104 Cal.App.5th 483, 525; see Evid. Code, § 353, subd. (a) [finding or judgment based thereon "shall not be set aside . . . or . . . reversed" unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"].) The purpose of the specific objection requirement is " 'that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' " (*Guenther*, at p. 525.) Here, mother's written objections and those at oral argument at the hearing were

8

limited to the availability of the declarant for cross-examination and did not include any of the grounds raised in this appeal. We could thus find these claims are therefore forfeited. However, we will proceed to address the merits of mother's claims.

As the Department argued below and correctly asserts again here on appeal, there was sufficient corroborating evidence to support the hearsay statements, and thus to support the juvenile court's jurisdictional findings.

Mother first objected to statements made by the minor "to the law enforcement officer as well as the social worker" as contained on page No. 10 of the jurisdiction report. We note the statements referenced in that portion of the report are statements made by the minor to Deputy Tyler Hermann and relayed by Deputy Hermann to the Department. That portion of the report makes no reference to statements made by the minor to the social worker. That said, the minor's statements to Deputy Hermann regarding the minor's use of illegal drugs while in mother's home were corroborated by the deputy's independent observations of the minor exhibiting symptoms of being under the influence at the time the deputy responded to mother's home, D.'s statements to sheriff's deputies that she used illegal drugs with the minor, witness L.C.'s statement to deputies that illegal drugs were being supplied by mother's partner, S.S., to the minor and D., and M.C.'s written statement to deputies that the minor was using illegal drugs at mother's home.

Similarly, the minor's statement to Deputy Hermann that mother was aware of his sexual relationship with M.C. was corroborated by the minor's admissions about the sexual relationship made during an argument with mother and D. in front of several sheriff's deputies and mother's tacit acknowledgment thereof by virtue of her lack of surprise, denial, or any response at all, and by mother's own admission to the social worker that she knew about the sexual relationship between the minor and M.C. and chose not to contact law enforcement or file a police report.

9

Next, mother objected to M.C.'s statements to the social worker claiming mother provided illegal drugs to D. and the minor. As the Department aptly notes, the hearsay statements referenced do not include any mention of the minor so we need not address that portion of mother's objection. M.C.'s statements to the social worker regarding mother providing illegal drugs to D. are supported by M.C.'s statements (both verbal and written, neither of which were objected to by mother) to sheriff's deputies that mother and S.S. provided illegal drugs to D.

Finally, mother objected to D.'s statements to social worker Bishop and program manager Wingate that D. was provided illegal drugs by mother and S.S. However, that hearsay statement was corroborated by M.C.'s unchallenged verbal and written statements to sheriff's deputies that mother and S.S. provided illegal drugs to D. As for D.'s hearsay statement that she traveled to Nevada with mother, S.S., M.C., and the minor to purchase illegal drugs, mother argues the Department's reliance on section 355.1, subdivision (b), was misplaced as there was no proof she "physically abused, neglected, or cruelly treated another minor" and therefore the hearsay statement could not be relied on solely as a basis for jurisdiction. However, we need not decide whether section 355.1, subdivision (b), applies under these circumstances, as mother failed to object on the grounds on which she now appeals and the juvenile court did not indicate, either expressly or impliedly, that it was relying on that statement as the sole basis for its jurisdictional findings. Moreover, there was sufficient corroborating evidence to support the court's jurisdictional findings as discussed above such that any error in admitting the statement was harmless because it was not reasonably probable its exclusion would have changed the outcome of the case. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447 [claims of evidentiary error are reviewed for prejudice, applying the " 'miscarriage of justice' " or " 'reasonably probable' " harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836]; *In re A.G.* (2020) 58 Cal.App.5th 973, 1015 [harmless error analysis applied in juvenile dependency matters].)

Mother argues D. gave contradictory accounts of who provided her with the illegal drugs, first stating it was her own mother, M.C., and then later claiming it was mother, explaining she lied because she was afraid of mother and S.S. The contradiction, however, is of little consequence because D.'s statements were available for the juvenile court to assess and consider as corroboration for the challenged hearsay statement. (*In re B.D., supra*, 156 Cal.App.4th at p. 985.) It is the juvenile court that must then determine what weight, if any, to give the corroborating evidence. (*Ibid.*)

We note that while mother also objected in the juvenile court to statements made by the minor to social worker Bishop regarding screenshots of text conversations between himself and M.C. concerning their sexual relationship in mother's home, she does not challenge those statements here. Instead, she argues the screenshots themselves (to which she did not object) indicate the sexual relationship between the minor and M.C. was over and therefore there was insufficient evidence the minor was at substantial risk of future harm at the time the juvenile court assumed jurisdiction. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394.) We decline to engage in such speculation, particularly when mother made no similar claim in the juvenile court and provides no evidence here on appeal to otherwise support her theory that there would be no risk of further contact between the minor and M.C.

Thus, even had mother not forfeited her claims, we conclude the juvenile court did not abuse its discretion in denying mother's section 355 objections to hearsay given the substantial evidence in the record corroborating the challenged hearsay statements.

***Substantial Evidence Supports Jurisdictional Findings***

We further conclude there was substantial evidence in the record to support the juvenile court's exercise of jurisdiction. We review the jurisdictional findings for substantial evidence, reviewing the record in the light most favorable to the judgment and drawing all reasonable inferences from the evidence to support the findings and orders of the dependency court. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Mother has the burden of

11

proving the evidence was insufficient to sustain the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Here, the amended petition alleged mother was aware the minor was using illegal drugs and failed to take steps to protect him (§ 300, subd. (b)); she was aware the minor had sexual intercourse with M.C. on multiple occasions (§ 300, subds. (b), (d)); she was aware and permitted the minor to have sexual relations with D., age 16, in violation of Penal Code section 261.5 (unlawful intercourse with a minor) (§ 300, subd. (d)); and she provided illegal drugs to the minor and D. (§ 300, subd. (b)). We may affirm jurisdiction if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) As discussed above, the evidence supporting the allegation that mother was aware the minor was having sexual intercourse with M.C. on multiple occasions included mother's admission to the social worker that she knew about the sexual relationship and chose not to contact law enforcement or file a police report, and the sheriff's report regarding the minor's admissions about the sexual relationship overheard by sheriff's deputies while the minor was arguing with mother and D. Because the evidence supports the court's jurisdictional finding under section 300, subdivision (b), on this basis, we need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. (*In re Alexis E.*, at p. 451.)

Finally, we reject mother's argument that the jurisdictional findings were faulty given that the minor was not at substantial risk of future harm because mother "took action immediately upon learning of the relationship by kicking M.C. out of her home," the text exchanges between the minor and M.C. indicated "the sexual relationship was over," and "M.C.'s actions had come to light, and she was facing possible charges under Penal Code section 261.5, subdivision (c)." Mother's own admission that she elected not to contact the authorities or file a police report contradicts her claim that she immediately took the necessary action to protect the minor, as does M.C.'s statement to the social

12

worker supervisor that mother kicked her out of the house because M.C. was upset about mother providing illegal drugs to D. Again, the juvenile court must determine what weight, if any, to give the corroborating evidence. (*In re B.D., supra*, 156 Cal.App.4th at p. 985; *In re L.B.* (2023) 88 Cal.App.5th 402, 411-412 [appellate court does not consider the credibility of witnesses or reweigh the evidence].)

In sum, the juvenile court did not err in exercising jurisdiction over the minor.

## II

### *Denial of Request to Continue Jurisdiction Hearing*

Mother contends the juvenile court abused its discretion when it denied her request to continue the jurisdiction hearing. She claims her recovery from a car accident constituted good cause and a continuance was not contrary to the minor's need for prompt resolution of his custody status given his whereabouts were unknown at the time of the hearing. We reject her assignment of error.

Section 352, subdivision (a)(1) provides that a juvenile court may continue a hearing if it is not "contrary to the interest of the minor." "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a)(1).) A continuance may be granted "only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a)(2).) "In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." (§ 352, subd. (a)(3).)

We review a juvenile court's denial of a request for continuance for an abuse of discretion. (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.) We " 'consider all the

evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.)

Here, the juvenile court acted well within its discretion in denying mother's request to continue the hearing. Mother was not present at the October 2024 jurisdiction hearing, which had previously been continued three times due to her failure to appear. On October 16, 2024, mother's counsel requested another continuance, informing the court that she requested a continuance of the jurisdiction hearing "several weeks ago" after receiving a telephone call from mother, who claimed she was hospitalized after being involved in a car accident. Counsel stated it was her understanding that mother was out of the hospital but counsel's staff had confirmed two days prior that mother "was not going to make it to the hearing." Despite knowing two days prior that she would not be present for the hearing, mother failed to provide the court with written notice and, at the very least, a declaration and documentation detailing the facts related to her hospitalization and the need for a continuance, as required by section 352, subdivision (a)(2).

Mother argues her counsel explained to the juvenile court that she "received little notice of [m]other's inability to travel from Oregon for the hearing," thus necessitating the oral motion for continuance. We do not share mother's self-serving reading of the record, which makes no mention of mother's inability to travel from another state as the reason for her inability to appear. And while an auto accident and hospitalization might constitute good cause under some circumstances, according to mother's counsel, mother's accident occurred "several weeks" prior to the hearing and mother was no longer hospitalized. Mother provided no evidence as to why she could not attend the hearing. Having been provided with nothing more from mother, good cause had not been shown for the oral motion or the continuance itself. The juvenile court exercised its discretion appropriately in denying the request for a continuance.

14

### III

### *ICWA*

Mother contends the juvenile court failed to ensure the Department complied with its mandatory duty of inquiry under the ICWA and therefore its finding that the ICWA does not apply is not supported by the evidence. Specifically, mother claims the Department failed to make any inquiry of known maternal and paternal relatives regarding the minor's possible Indian ancestry.[3] We agree the court's ICWA finding must be vacated and further ICWA compliance proceedings undertaken.

*Additional Background*

In June 2024, social workers inquired of mother and the father regarding possible Native American ancestry. Both denied any known Indian heritage.

The Department's detention report, filed June 28, 2024, recommended the juvenile court find, among other things, either (1) there was no reason to know or believe the minor was an Indian child, (2) there was a reason to believe the minor was an Indian child and the Department was required to complete further ICWA inquiry, or (3) there was a reason to know the minor was an Indian child.

Mother was present at the detention hearing on June 28, 2024, and a number of the hearings thereafter. The juvenile court never inquired of mother regarding possible Indian ancestry. At the July 1, 2024, continued detention hearing, the court adopted all the Department's recommended findings with the exception of one—the recommended ICWA finding.

---

[3] The Department's responsive brief did not address the ICWA claim.

The Department's detention/jurisdiction report filed July 8, 2024, stated the ICWA "does not apply" and erroneously noted that, on June 28, 2024, the juvenile court "found the ICWA Act does not apply at the Initial Hearing."

At the July 10, 2024, hearing, the court made no ICWA findings on the record. The court adopted the recommended findings and orders in the July 8, 2024, jurisdiction report, none of which referred to the ICWA.

The Department's September 2024 addendum report made no mention of the ICWA. The November 2024 disposition report reiterated the Department's earlier erroneous statement that, on June 28, 2024, the juvenile court "found the ICWA Act does not apply at the Initial Hearing."

The contested dispositional hearing commenced on November 18, 2024. Mother was present. The father was not, nor had he been present at any prior hearing. The juvenile court found there was no reason to know the minor was an Indian child and "unless information is received indicating the child is an Indian child, ICWA does not apply." The court's findings and orders after the hearing (form JV-415) state, "The court finds that there is no reason to know that the child is an Indian child. Unless new information is received indicating that the child is an Indian child, ICWA does not apply."

*Applicable Law*

Child welfare agencies and juvenile courts "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).) This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131-1132.) The duty of inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and

16

where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).) The duty of inquiry "continues throughout the dependency proceedings." (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.)

A juvenile court must make a finding whether the ICWA applies. (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 965-966; *In re E.W.* (2009) 170 Cal.App.4th 396, 403.) A juvenile court's finding that the ICWA does not apply is "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) Its "fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C., supra*, 16 Cal.5th at p. 1141.) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D*. (2024) 16 Cal.5th 1087, 1101-1102.)

*Analysis*

Here, the Department inquired of both parents at the inception of the dependency proceedings. Both parents denied Native American ancestry. Thereafter, and for the next five months until the November 2024 disposition hearing, the record contains no evidence the Department undertook any efforts to identify whether the minor had any extended relatives and, if so, inquire of those relatives regarding possible Indian ancestry as required by the ICWA. Instead, it appears from the Department's reports that it was laboring under the misguided impression that the juvenile court ruled, at the June 28, 2024, hearing, that the ICWA did not apply. Our review of the record, however, reveals the court never made such a finding at the detention hearing. In fact, while the court adopted nearly all of the Department's recommended findings set forth in its June 28, 2024, report, the court did *not* adopt the recommended ICWA finding. Moreover, as we have stated, the Department has "an affirmative and continuing duty" in every

17

dependency proceeding to determine whether the ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).) Therefore, even if the court *had* made the earlier ICWA finding, the Department was derelict in its continuing duty to make inquiries under the ICWA.

Our review of the record also reveals the juvenile court never asked mother, either at the initial hearing or any hearing thereafter, whether the minor was or might be an Indian child and never instructed mother to inform the court regarding any information mother subsequently received that might provide a reason to know the minor was or might be an Indian child, as required by section 224.2, subdivision (c). In particular, prior to making its ICWA finding at the November 2024 disposition hearing, and without any discussion regarding the ICWA or inquiry of mother's potential Indian ancestry, the juvenile court found the ICWA did not apply.

The Department ended its inquiry after obtaining the parents' denials of Indian ancestry. The court did not ask mother about possible Indian heritage, nor is there any evidence in the record that it determined the Department conducted an adequate, proper, and duly diligent ICWA investigation and inquiry. (*In re Dezi C., supra*, 16 Cal.5th at p. 1141; *In re Kenneth D., supra*, 16 Cal.5th at pp. 1101-1102.) Therefore, the juvenile court abused its discretion in finding the ICWA did not apply.

18

**DISPOSITION**

The juvenile court's finding that the ICWA does not apply is vacated and the matter is remanded for further ICWA compliance proceedings, whereafter the juvenile court shall enter new ICWA findings.  If the minor is found to be an Indian child, the juvenile court shall proceed in compliance with the ICWA, including considering any petition filed to invalidate prior orders.  (25 U.S.C. § 1914; § 224, subd. (e).)  In all other respects, the orders and judgment of the juvenile court are affirmed.


_____/s/_____
EARL, P. J.



We concur:


_____/s/_____
KRAUSE, J.



_____/s/_____
WISEMAN, J.[*]

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.